IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 80922-9-I |
| | ) | |
| MARY ANN KOSNOFF, | ) | |
| n/k/a MARY ANN MCCORMICK, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TIMOTHY DAVID KOSNOFF, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — A trial court has the discretion to hold a party in contempt of court when they intentionally violate a court order. A dissolution decree required that Timothy Kosnoff pay spousal maintenance until he was retired from the practice of law. The trial court found Kosnoff chose to not pay spousal maintenance while still practicing law. Because the court's findings of fact are supported by substantial evidence, the court did not abuse its discretion.

Kosnoff also contends the court lacked subject matter jurisdiction to enter a contempt order because his separation contract allowed for arbitration of spousal maintenance disputes and the court lacked personal jurisdiction because the order authorizing substitute service was flawed. But a superior court's subject matter jurisdiction extends to the enforcement of dissolution decrees it issued. Because his ex-wife moved to enforce the dissolution decree, the court properly exercised

its authority to enforce its own order. And because Kosnoff was personally served, any issues with substitute service are moot.

Therefore, we affirm.

## FACTS

Attorney Timothy Kosnoff focused on representing victims of sexual abuse. Kosnoff was married to Mary Ann McCormick. They agreed to a separation contract and dissolved their marriage in February of 2013. The dissolution decree ordered spousal maintenance "as set forth in the Separation Contract."[1] Section 3.1 of the separation contract required that Kosnoff pay McCormick one-third of his annual income "as maintenance through the tax year in which he retires from the practice of law."[2] The separation contract also contained several arbitration provisions, including in the spousal maintenance section.

In late 2018, Kosnoff notified McCormick that he planned to retire from practicing law on December 31 of that year. He stopped paying monthly maintenance as of December 31. In April of 2019, he confirmed he had retired as of December 31, 2018.

Also in 2019, a team of lawyers considering sexual abuse litigation against the Boy Scouts of America sought Kosnoff's expertise in handling such cases. According to Kosnoff, he "agreed to provide [his] knowledge and expertise to

---

[1] Clerk's Papers (CP) at 16.
[2] CP at 396.

assist them in their efforts to build a mass-tort case against the [Boy Scouts]."[3] That July, Kosnoff appeared on NBC's Today Show to discuss sexual abuse cases against the Boy Scouts. McCormick saw the appearance, found additional media appearances by Kosnoff, and concluded he had not retired from practicing law, and, therefore, still had a duty to pay maintenance. That October, McCormick's attorney wrote to Kosnoff to ask whether he was practicing law and still owed maintenance. Other than acknowledging receipt of the letter, Kosnoff did not respond.

In November, McCormick filed a motion to compel Kosnoff to show cause why he should not be held in contempt, arguing he failed to comply with the spousal maintenance provision of the dissolution decree. Because Kosnoff had relocated to Puerto Rico and could spend up to six months at a time sailing, McCormick also moved for substitute service. Judge Michael Scott granted the motions and set a show cause hearing for December 19, 2019. Kosnoff received the show cause order by e-mail and filed a motion to quash the order authorizing substitute service.

Kosnoff and his attorney appeared before Commissioner Paul Eagle for the show cause hearing. Kosnoff objected to the hearing, arguing he had never been properly served. Commissioner Eagle declined to rule on the question of service because Kosnoff's motion to quash was before Judge Julie Spector, and she was scheduled to consider it the next day. As a result, Commissioner Eagle continued

---

[3] CP at 173.

the hearing, and McCormick proposed setting it for January 29. The court told the parties to agree on a date and adjourned the hearing.

McCormick's attorney, Brad Evens, immediately attempted to serve process on Kosnoff in the hallway outside the courtroom, but Kosnoff refused and left the courthouse. Kosnoff's attorney took the documents handed to him by Evens. The parties agreed to hold the contempt hearing on January 29, and Commissioner Eagle entered an "alias" show cause order setting a hearing for that day.[4] Judge Spector later denied Kosnoff's motion to quash.

Kosnoff did not appear at the January 29 contempt hearing before Commissioner Camille Schaefer, although his attorney did. His attorney argued the hearing was improper because Kosnoff was never properly served process and because the arbitration provisions in the separation contract deprived the court of subject matter jurisdiction. Commissioner Schaefer concluded that the dispute was not subject to arbitration and found that Kosnoff was practicing law, was still subject to the dissolution decree, and was in contempt by intentionally violating the dissolution decree. In making its ruling, the court relied on news articles and the "Abused in Scouting" website's discussion of the Boy Scout case.

Kosnoff appeals.

---

[4] As explained by Commissioner Eagle, an "alias" order to show cause is "just basically a perpetuating order from the original order to show cause that was signed in ex-parte." CP at 323.

ANALYSIS

I.  Service of Process

Kosnoff argues the court erred by granting McCormick's motion for substitute service.  McCormick contends the issue is moot because Kosnoff was personally served.  Because effective personal service of process is always adequate,[5] Kosnoff's alleged error is moot if personal service of process was effective.[6]

We review de novo whether service of process was effective.[7]  The plaintiff bears the burden of establishing service was proper.[8]  Once established, the defendant must show by clear and convincing evidence that service was ineffective.[9]

RCW 4.28.080(16) authorizes personal service by delivering process to the defendant personally.[10]  CR 4(c) allows "anyone who is competent, over 18 years

---

[5] Scanlan v. Townsend, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014) (citing RCW 4.28.080(15)).

[6] See Westerman v. Cary, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994) ("A case is moot where 'a court can no longer provide effective relief.'") (quoting Orwick v. Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)); see also Scanlan, 181 Wn.2d at 856 (declining to consider a challenge to substitute service where personal service was effective).

[7] Scanlan, 181 Wn.2d at 847 (citing Streeter-Dybdahl v. Nguyet Huynh, 157 Wn. App. 408, 412, 236 P.3d 986 (2010)).

[8] Id. at 856 (citing Streeter-Dybdahl, 157 Wn. App. at 412).

[9] Streeter-Dybdahl, 157 Wn. App. at 412 (citing Woodruff v. Spence, 76 Wn. App. 207, 210, 883 P.2d 936 (1994)).

[10] RCW 4.28.080(16) also allows for personal service in ways that are not present here.

of age, and not a party" to serve process.[11]  A party's attorney can accomplish

personal service on the opposing party.[12]  Personal service of process can be

effective even if the defendant refuses to accept it.[13]  Because the relevant portion

of RCW 4.28.080(16) is substantially similar to Federal Rule of Civil Procedure

4(e)(2), we can look to the federal courts' interpretations of parallel rules for

guidance.[14]  "Sufficient [personal] service may be found where there is a good faith

effort to comply with the requirements of [Federal Rule of Civil Procedure]

4(e)(2) which has resulted in placement of the summons and complaint within the

defendant's immediate proximity and further compliance with Rule 4(e)(2) is only

prevented by the defendant's knowing and intentional actions to evade service."[15]

Personal service under RCW 4.28.080(16), like its federal equivalent, can be

effective when service substantially complies with its requirements.[16]

Here, Evens announced in the hearing that he intended to personally serve

Kosnoff.  Once outside the courtroom, Evens immediately attempted to hand

Kosnoff a packet containing the show cause order, a motion for contempt, a

---

[11] Scanlan, 181 Wn.2d at 849 (citing CR 4(c)).

[12] Id. (citing Roth v. Nash, 19 Wn.2d 731, 737-38, 144 P.2d 271 (1943)).

[13] See United Pac. Ins. Co. v. Disc. Co., 15 Wn. App. 559, 562, 550 P.2d 699 (1976) (holding personal service was effective when the defendant refused to accept process because it "need not actually be placed in the defendant's hand").

[14] Noll v. Special Elec. Co., Inc., 9 Wn. App. 2d 317, 320-21, 444 P.3d 33 (2019) (citing Outsource Servs. Mgmt. LLC v. Nooksack Bus. Corp., 172 Wn. App. 799, 806, 292 P.3d 147 (2013)).

[15] Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1132, 1136 (9th Cir. 2009).

[16] Id. at 1135; Chai v. Kong, 122 Wn. App. 247, 253, 93 P.3d 936 (2004).

declaration in support of the contempt motion, a proposed contempt order, and other documents. Kosnoff hurried past Evens and refused to accept service. Evens handed the documents to Kosnoff's attorney instead and documented those events with a declaration of service. Because a party cannot willfully thwart the judicial process by refusing an otherwise effective service,[17] the unchallenged declaration of service established personal service on Kosnoff himself.[18]

Kosnoff argues service was not effective because the show cause order Evens served was dated for the December 19 hearing that had just concluded, and he never received formal service of the January 29 hearing. But this difference is immaterial. The "process" here is the motion to show cause for contempt, and it was served. Adequate notice of the continued hearing date is a separate matter,[19] and Kosnoff fails to show he did not have notice. Kosnoff's attorney agreed to the January 29 hearing date, and "[t]he attorney's knowledge is deemed to be the client's knowledge, when the attorney acts on his behalf."[20] Kosnoff knew the rescheduled contempt hearing would be held on January 29. He

---

[17] United Pac. Ins., 15 Wn. App. at 562; see Travelers, 551 F.3d at 1136 ("'Where a defendant attempts to avoid service[,] e.g. by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant.'") (quoting Doe 1 v. Liu Qi, 349 F. Supp.2d 1258, 1275 n.5 (N.D. Cal. 2004)).

[18] See Streeter-Dybdahl, 157 Wn. App. at 412 ("An affidavit of service is presumptively correct.") (citing Woodruff, 76 Wn. App. at 210).

[19] See Rabbage v. Lorella, 5 Wn. App. 2d 289, 297-98, 426 P.3d 768 (2018) (explaining improper service of a motion in a dissolution action does not affect the trial court's subject matter jurisdiction or personal jurisdiction).

[20] Haller v. Wallis, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978).

cites no authority that the plaintiff must serve a new notice on a defendant when a hearing is continued with both parties present.[21]

Kosnoff was personally served process. Kosnoff knew the contempt hearing was rescheduled for January 29. Because McCormick effected personal service on Kosnoff for the contempt hearing, any issues involving substitute service for the hearing are moot.

II. Contempt

We review a court's decision to hold a party in contempt for abuse of discretion.[22] A court abuses its discretion when its decision rests upon untenable factual grounds or was made for untenable legal reasons.[23]

Kosnoff argues the court erred by finding him in contempt because, first, the matter was arbitrable; second, the court relied upon inadmissible hearsay evidence; and, third, neither the law nor facts supported a contempt finding.

Kosnoff contends the trial court lacked subject matter jurisdiction to find him in contempt of the dissolution decree because the separation contract requires arbitration. "'Subject matter jurisdiction refers to a court's ability to entertain a type

---

[21] In his reply brief, Kosnoff cites Estate of Bremer v. Walker, 187 Wn. App. 450, 348 P.3d 1245 (2015), for support, but that case is inapplicable. The Bremer court explained its holding does not apply when the trial court continues a hearing with both parties present. 187 Wn. App. at 459 n.1.

[22] Weiss v. Lonnquist, 173 Wn. App. 344, 363, 293 P.3d 1264 (2013) (citing Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995)).

[23] In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997) (citing In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993); State v. Rundquist, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

of case.'"[24] Superior courts have the authority to decide motions to enforce maintenance obligations.[25] We review a challenge to the court's subject matter jurisdiction de novo as a question of law.[26]

Kosnoff misunderstands the issue that was before the trial court. McCormick moved for Kosnoff to be held in contempt for failing to comply with the dissolution decree issued by the trial court. Kosnoff raised the availability of arbitration as a defense but never moved to compel arbitration.[27] Thus, the issue before the court was whether it had the authority to interpret and enforce the dissolution decree.

King County Superior Court entered Kosnoff and McCormick's dissolution decree. Washington's constitution provided it subject matter jurisdiction over the decree.[28] Under RCW 26.18.040(3), it "retain[ed] continuing jurisdiction under

---

[24] Banowsky v. Guy Backstrom, DC, 193 Wn.2d 724, 731, 445 P.3d 543 (2019) (internal quotation marks omitted) (quoting In re Marriage of Buecking, 179 Wn.2d 438, 448, 316 P.3d 999 (2013)).

[25] Bero v. Name Intelligence, Inc., 195 Wn. App. 170, 179, 381 P.3d 71 (2016) (citing Allen v. Am. Land Research, 95 Wn.2d 841, 852, 631 P.2d 930 (1981)); see In re Marriage of Mathews, 70 Wn. App. 116, 126, 853 P.2d 462 (1993) ("A court in a dissolution proceeding has the authority to enforce its decree in a contempt proceeding.").

[26] Outsource Servs. Mgmt. LLC v. Nooksack Bus. Corp., 181 Wn.2d 272, 276, 333 P.3d 380 (2014) (citing Joy v. Kaiser Aluminum & Chem. Corp., 62 Wn. App. 909, 911, 816 P.2d 90 (1991)).

[27] See Report of Proceedings (RP) (Jan. 29, 2020) at 13 (Kosnoff's counsel explaining he had no objection to holding the contempt hearing, "[o]ther than our objections on subject matter jurisdiction").

[28] Rabbage, 5 Wn. App. 2d at 297 (citing WASH. CONST. art. IV, § 6; Buecking, 179 Wn.2d at 448-50).

[chapter 26.18 RCW] until all duties of either support or maintenance, or both, of the obligor, including arrearages, [had] been satisfied." The court also had the authority to interpret and enforce its own order.[29] Thus, the court retained subject matter jurisdiction to decide whether Kosnoff's maintenance duties under the decree had been satisfied. And especially because neither McCormick nor Kosnoff sought to compel arbitration, the presence of arbitration provisions did not preclude the court from exercising its authority over the decree.

When interpreting the decree, the trial court relied upon several news articles and a printout of the Abused In Scouting website to find Kosnoff was practicing law. Kosnoff argues the court erred because the contents of the articles and website were inadmissible hearsay within hearsay.[30] McCormick contends they were properly admitted as nonhearsay under ER 801(d)(2) or under the state-of-mind exception for hearsay in ER 803(a)(3).

We review a court's interpretation of the rules of evidence de novo.[31] If the court's interpretation was correct, we review its decision to admit evidence for abuse of discretion.[32] Hearsay is any out-of-court statement offered in evidence to

---

[29] Bero, 195 Wn. App. at 179 (citing Allen, 95 Wn.2d at 852); Mathews, 70 Wn. App. at 126.

[30] We note Kosnoff objected to the articles and website only on hearsay grounds. CP at 161-62; RP (Jan. 29, 2020) at 26-27.

[31] State v. Arredondo, 188 Wn.2d 244, 256, 394 P.3d 348 (2017) (citing Diaz v. State, 175 Wn.2d 457, 461-62, 285 P.3d 873 (2012)).

[32] Arredondo, 188 Wn.2d at 256 (citing State v. Gresham, 173 Wn.2d 405, 419, 269 P.3d 207 (2012)).

prove the truth of the matter asserted by the evidence itself.[33] Hearsay is generally inadmissible.[34]

The Abused in Scouting website would not be admissible as direct proof that Kosnoff is, as the site asserts, a practicing attorney. The website is admissible, however, to show the existence of advertisements for the provision of legal services to those sexually abused as Boy Scouts.[35] Kosnoff admitted he is working with a team of attorneys building a sexual abuse case against the Boy Scouts. Abused in Scouting identified him as a "featured attorney" on "Abused in Scouting's Team."[36] Advertising legal services from "featured attorneys" supports a reasonable inference that the people identified may be engaged in the practice of law. The admission of the webpage to prove the existence of advertising for legal services by Kosnoff did not violate hearsay standards.[37]

Assuming without deciding that the court erred by admitting the news articles, the question remains whether the court's reliance on hearsay was harmless error. An evidentiary error is not prejudicial unless, within reasonable

---

[33] Sisley v. Seattle Sch. Dist. No. 1, 171 Wn. App. 227, 232-33, 286 P.3d 974 (2012) (quoting ER 801(c)).

[34] ER 802.

[35] See Sisley 171 Wn. App. at 233 (newspaper article not offered to prove the truth of the matters asserted therein is not hearsay).

[36] CP at 73.

[37] Any nonhearsay concerns about the foundation for the admission of the website were not raised in the trial court.

probabilities, the outcome would have been different without the error.[38]  Thus, the issue is whether the remaining evidence supported finding Kosnoff in contempt.

A person can be held in contempt when the court finds "intentional disobedience of a lawful court order."[39]  When an obligor to a spousal maintenance order fails to comply, a court can hold that person in contempt.[40]  The order being enforced is understood "according to the plain meaning of its terms when read in light of the issues and purposes surrounding its entry."[41]

The dissolution decree requires that Kosnoff continue to pay maintenance "through the tax year in which he retires from the practice of law."[42]  The court found Kosnoff was not retired from the practice of law.  Kosnoff asserts that finding of fact was not supported by the record.[43]  He does not challenge the court's interpretation of the decree.

___

[38] Saldivar v. Momah, 145 Wn. App. 365, 401, 186 P.3d 1117 (2008) (citing Doe v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints, 141 Wn. App. 407, 437, 167 P.3d 1193 (2007)).

[39] In re Marriage of Humphreys, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995) (citing RCW 7.21.010(1)).

[40] In re Marriage of Didier, 134 Wn. App. 490, 500, 140 P.3d 607 (2006) (citing RCW 26.18.050; RCW 7.21.010; Rhinevault v. Rhinevault, 91 Wn. App. 688, 693-94, 959 P.2d 687 (1988)).

[41] R/L Assocs. Inc. v. City of Seattle, 113 Wn.2d 402, 410, 780 P.2d 838 (1989) (citing Johnston v. Beneficial Mgmt. Corp. of Am., 96 Wn.2d 708, 712-13, 638 P.2d 1201 (1982)).

[42] CP at 396; see CP at 16 (incorporating separation contract's terms into dissolution decree).

[43] Kosnoff argues for reversal because the trial court's written findings were inadequate.  But the court here made written findings and expressly incorporated its oral rulings and findings.  See CP at 376-78.  Kosnoff fails to explain why this was inadequate for a civil contempt order.  Compare In re Rapid Settlements, Ltd,

We review challenges to a finding of fact for substantial evidence.[44] Substantial evidence supports a finding of fact when the evidence is "'sufficient to persuade a rational fair-minded person the premise is true.'"[45] As the party challenging the finding, Kosnoff has the burden of showing it was unsupported.[46]

In a declaration, Kosnoff explained that after obtaining a $3 million judgment in a sex abuse case in 2001, he "diverted the rest of [his] career to representing sex abuse victims against institutions, including . . . the Boy Scouts of America."[47] In 2019, Kosnoff was "approached by a team of lawyers who sought my expertise handling these cases. I agreed to provide my knowledge and expertise to assist them in their efforts to build a mass-tort case against the [Boy Scouts of America]."[48] That April, Kosnoff told McCormick he had stopped paying

---

189 Wn. App. 584, 605, 359 P.3d 823 (2015) ("Nothing in chapter 7.21 RCW requires that the court make a written finding of intentional conduct."), with Templeton v. Hurtado, 92 Wn. App. 847, 853, 965 P.2d 1131 (1998) (holding detailed written findings of fact were required for a finding of criminal contempt) (citing State v. Head, 136 Wn.2d 619, 964 P.2d 1187 (1998)). And even if the court's findings of fact were inadequate, the proper remedy would be remand, not reversal. Templeton, 92 Wn. App. at 853.

[44] Braatz v. Braatz, 2 Wn. App. 2d 889, 899, 413 P.3d 612 (2018) (citing In re A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015); Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 73 P.3d 369 (2003)).

[45] Braatz, 2 Wn. App. 2d at 899 (quoting Sunnyside, 149 Wn.2d at 879).

[46] Matter of Custody of A.T., 11 Wn. App. 2d 156, 162, 451 P.3d 1132 (2019) (citing Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 369, 798 P.2d 799 (1990)).

[47] CP at 169.

[48] CP at 172-73.

maintenance because "I retired from the practice of law."[49] On July 24, Kosnoff appeared on NBC's Today Show to be interviewed about sex abuse cases against the Boy Scouts. According to McCormick, who watched the show, Kosnoff said he came out of retirement to support the victims.[50] During the contempt hearing, Kosnoff's counsel explained his client was "assisting other lawyers in trying to get the Boy Scouts of America to acknowledge their abusive behaviors."[51] Also, Kosnoff remains licensed to practice law in Washington.

The practice of law in Washington is defined by GR 24:[52]

The practice of law is the application of legal principles and judgment with regard to the circumstances or objectives of another entity or person(s) which require the knowledge and skill of a person trained in the law. This includes but is not limited to:

(1) Giving advice or counsel to others as to their legal rights or the legal rights or responsibilities of others for fees or other consideration.

(2) Selection, drafting, or completion of legal documents or agreements which affect the legal rights of an entity or person(s).

(3) Representation of another entity or person(s) in a court, or in a formal administrative adjudicative proceeding or other formal dispute resolution process or in an administrative adjudicative proceeding in which legal pleadings are filed or a record is established as the basis for judicial review.

(4) Negotiation of legal rights or responsibilities on behalf of another entity or person(s).[53]

---

[49] CP at 6.

[50] Kosnoff has not challenged this statement from McCormick's declaration.

[51] RP (Jan. 29, 2020) at 27.

[52] State v. Yishmael, 195 Wn.2d 155, 160, 456 P.3d 1172 (2020).

[53] GR 24(a).

Kosnoff asserted to the trial court he was not engaged in the practice of law because "at this point there is no lawsuit" and "my role in this exercise is not as a trial lawyer advocate."[54]  But the practice of law is not so limited.[55]  It is undisputed that Kosnoff joined a team of attorneys to use his legal knowledge to help build a mass-tort case, publicized that fact, and was asked to join the team because of his experience representing clients in sex abuse cases against the Boy Scouts.  From this, a reasonable factfinder could infer Kosnoff was still practicing law.  An attorney can assist others in a manner that does not constitute the practice of law,[56] but Kosnoff provided no evidence of his actual role nor any explanation of why it would not constitute the practice of law.  Because the evidence presented allowed a reasonable person to conclude Kosnoff was practicing law, substantial evidence supported the trial court's finding of fact.[57]

Kosnoff also challenges the court's finding of fact that he violated the dissolution order in bad faith.  Although a finding of bad faith is required to find a party in contempt for violating a parenting plan,[58] a finding of bad faith is not

---

[54] CP at 173.

[55] GR 24(a).

[56] See, e.g., GR 24(b) (activities excluded from the "practice of law").

[57] Braatz, 2 Wn. App. 2d at 899.  We note that this finding of fact would be supported by substantial evidence even without the articles and website Kosnoff challenges.

[58] RCW 26.09.160(2)(b); see Humphreys, 79 Wn. App. at 599 (citing RCW 26.09.160(2) to explain a contempt finding requires a finding of bad faith).

required to find a party in contempt of a maintenance order.[59]  The germane issue is whether Kosnoff intentionally violated the dissolution decree.[60]

The court found Kosnoff acted intentionally by choosing to practice law without paying maintenance.  A party violates an order intentionally when he is or should be aware of his court-ordered obligations and undertakes an intentional act that violates them.[61]  It is undisputed Kosnoff chose to stop paying maintenance to McCormick at the end of 2018.  In 2019, Kosnoff chose to practice law by joining a team of attorneys building a mass-tort action against the Boy Scouts.  And even after receiving McCormick's letter questioning his current practice of law, he continued not paying maintenance.  Because this evidence allows a reasonable person to conclude Kosnoff intentionally violated the dissolution decree, substantial evidence supports the finding of fact.[62]

The dissolution decree imposed a spousal maintenance obligation on Kosnoff so long as he was not retired from the practice of law.  The trial court found Kosnoff chose not to fulfill that obligation despite continuing to practice law.  Substantial evidence supports the trial court's findings of fact.  Because Kosnoff intentionally violated the spousal maintenance provision of the dissolution decree,

---

[59] RCW 26.18.050; RCW 7.21.010(1).

[60] Humphreys, 79 Wn. App. 599 (citing RCW 7.21.010(1)).

[61] See In re Estates of Smaldino, 151 Wn. App. 356, 364-66, 212 P.3d 579 (2009) (upholding a contempt finding when an attorney chose not to read a properly served temporary restraining order and undertook an intentional act that violated the order).

[62] Braatz, 2 Wn. App. 2d at 899.

the court did not abuse its discretion under RCW 26.18.050 by finding Kosnoff in contempt.

III. Attorney Fees on Appeal

McCormick requests her attorney fees from this appeal pursuant to RAP 18.1 and RCW 7.21.030(3). RAP 18.1 allows an award of attorney fees to a party when authorized by law. A party responding to the appeal of a contempt order can be awarded their costs from the contempt proceeding, including attorney fees, pursuant to RCW 7.21.030(3).[63] We award McCormick attorney fees in an amount to be determined by a commissioner of this court upon compliance with RAP 18.1.

Therefore, we affirm.

_____
Verellen, J.

WE CONCUR:

_____    _____
Brennan, J.                Appelwick, J.

---

[63] In re Marriage of Curtis, 106 Wn. App. 191, 202, 23 P.3d 13 (2001) (citing R.A. Hanson Co. v. Magnuson, 79 Wn. App. 497, 505, 903 P.2d 496 (1995)).